---------------------------------------------------------

JOEL FRIEDMAN
on behalf of himself and
all other similarly situated consumers

                             Plaintiff,


            -against-



AMERICAN EXPRESS LEGAL; ALEXANDER FINK, ESQ.
AND AMERICAN EXPRESS NATIONAL BANK
F/K/A AMERICAN EXPRESS CENTURION BANK

                     Defendants.


-------------------------------------------------------------

# CLASS ACTION COMPLAINT

### *Introduction*

1.    Plaintiff Joel Friedman seeks redress for the illegal practices of American Express Legal

      ("AEL"); Alexander Fink, Esq. ("Fink") and American Express National Bank f/k/a

      American Express Centurion Bank ("AMEX") concerning the collection of debts, in

      violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that

      the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

4.    Defendant AEL is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. §

      1692(a)(6), as its principal business purpose is the collection of debts.

5.    Defendant Fink is a registered attorney with Defendant AEL.

6.   Upon information and belief, Defendant AELs' principal place of business is located in Ramsey, New Jersey.

7.   Defendant AMEX is a national bank and the original creditor to whom the alleged debt was owed.

8.   Upon information and belief, Defendant AMEX's principal place of business is located in Salt Lake City Utah.

### *Jurisdiction and Venue*

9.   This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

10.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to Joel Friedman*

11.   Upon information and belief, on a date better known by Defendants, Defendants began to attempt to collect an alleged consumer debt from the Plaintiff.

12.   In early December of 2019, the Plaintiff received a complaint that was filed against him on October 11, 2019 in Superior Court of New Jersey, Ocean County.

13.   The lawsuit was filed by Defendant Fink of AEL, on behalf of their client, American Express National Bank.

14.   On or about December 19, 2019 Plaintiff called and spoke to a representative from AEL, and attempted to dispute the debt over the phone.

15.   Defendant AEL demanded a reason for the Plaintiff's dispute.[1]

---

[1] Semper v. JBC Legal Group, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005). (Collector's must communicate that a debt is disputed. The FDCPA does not give debt collectors the authority to determine unilaterally whether a dispute has merit.), Hoffman v. Partners in Collections, Inc., 1993 U.S. Dist. LEXIS 12702 (N.D. Ill. Sept. 13, 1993). (The court held that the FDCPA did not require that the consumer notify the agency of his basis for disputing the debt, or that any stated reason for the dispute had to be one that would relieve the consumer of any part of the liability for the debt. The complaint alleged that the consumer notified the collection agency that the debt was disputed and that the agency did not cease

16.     Defendant AEL then informed the Plaintiff that he must put his dispute in writing and fax it to the Defendant.  Hooks v. Forman, Holt, Eliades & Ravin, LLC, 717 F.3d 282, 2013 U.S. App. LEXIS 10754, 2013 WL 2321409 (2d Cir. N.Y. 2013). (Requiring a consumer to dispute a debt in writing violates the FDCPA.)

17.     The FDCPA does not require the consumer to provide any reason at all in order to dispute a debt.[2]

18.     The FDCPA allows the consumer to orally dispute a debt.[3]

19.     Upon information and belief, Defendant AEL and its employee as a matter of procedural practice and pattern never intend to follow through with the validation rights they purportedly provide in the initial communication.

20.     Upon information and belief, Defendant AEL and its employees when receiving written disputes as a matter of procedural practice and pattern do not provide verification of debts since they maintain all disputes in writing must be submitted with a valid reason.

21.     Upon information and belief, Defendant AEL and its employee intentionally denied the Plaintiff his dispute rights afforded to him under the FDCPA.

22.     Upon information and belief, Defendant AEL and its employee wrongfully stated to the

---

collection of the debt until it obtained verification of the debt. The complaint was sufficient to allege a violation of 15 U.S.C. § 1692g(b). The court also held that the complaint sufficiently alleged a violation of 15 U.S.C. § 1692e(8) by stating that the agency reported the disputed debt to credit agencies without disclosing that it had been disputed. The court noted that " There is no requirement that any dispute be "valid" for this statute to apply; only that there be a dispute." Failure to communicate a dispute whether or not valid will violate 15 U.S.C. § 1692e(8) for failure to communicate that a disputed debt is disputed.)

[2] Sambor v. Omnia Credit Servs., 183 F. Supp. 2d 1234 (D. Haw. 2002), Mendez v. M.R.S. Assoc., 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004). (A consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all), Whitten v. ARS National Servs. Inc., 2002 WL 1050320 *4 (N.D. 111 May 23, 2002). (Imposing a requirement that a consumer have a `valid' reason to dispute the debt is inconsistent with FDCPA), Castro v. ARS National Servs., Inc., 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000), Frey v. Satter, Beyer & Spires., 1999 WL 301650 (N.D. Ill. May 3, 1999), DeSantis v. Computer Credit, Inc., 269 f.3d 159 (2nd Cir. 2001), Mejia v. Marauder Corporation., 2007 WL 806486 (N.D. Cal. 2007). (Unlawful to suggest that proof of payment required for dispute.)

[3] Brady v. The Credit Recovery Company, Inc., 160 F.3d 64 (1st Cir. 1998). (The FDCPA does not limit the time period for disputing a debt. A consumer can always dispute a debt with a debt collector, regardless of the passage of time. Credit reporting constitutes an attempt to collect a debt.), See, e.g., Rivera v. Bank One., 145 F.R.D. 614, 623 (D.P.R. 1993). (A creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"), Matter of Sommersdorf., 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991), Ditty v. CheckRite, Ltd., 973 F.Supp. 1320, 1331 D.Utah 1997). (A consumer is entitled to dispute a debt orally and need not seek validation to overcome the debt collector's assumption of validity.)

Plaintiff that he could not orally dispute the debt with Defendant AEL.

23.     Upon information and belief, Defendant AEL and its employee wrongfully stated to the Plaintiff that he could only dispute a debt in writing.

24.     Upon information and belief, Defendant AEL and its employee wrongfully stated to the Plaintiff that he must have a reason to dispute a debt.

25.     Upon information and belief, Defendant AEL and its employee by intentionally denying the Plaintiff and any other debtor to dispute the debt orally and without a valid reason unfairly intimidate and force debtors in to paying disputed debts.

26.     The AEL employee who spoke with Joel Friedman intended to speak the said words to the Plaintiff.

27.     The acts and omissions of Defendant AEL and its employee done in connection with efforts to collect a debt from the Plaintiff were done intentionally and willfully.

28.     Upon information and belief, Defendant AEL and its employees intentionally and willfully violated the FDCPA and do so as a matter of pattern and practice by not letting any of the class members orally dispute the debt and by maintaining that the debtors have a valid reason to dispute any debt contrary to the FDCPA.

29.     Upon information and belief, aside from the complaint that the Plaintiff received from the Defendants, the said December 19, 2019 communication was the Defendants' initial communcation with the Plaintiff.

30.     At no point, before or after the said December 19, 2019 communication, did the Defendants adequately advise the Plaintiff of his rights, because a thirty (30) day validation notice required by 15 U.S.C. § 1692(g) was not provided to the Plaintiff.

31. At no point, before or after the said December 19, 2019 communication did the Defendants inform the Plaintiff that they were attempting to collect a debt, and that any information obtained would be used for that purpose, as required by 15 U.S.C. § 1692(e)(11).

32. The Defendants failed to give Plaintiff notice of his rights as mandated by 15 U.S.C. §§ 1692g and 1692e(11), within five (5) days of Defendants' said initial communication to the Plaintiff.

33. The Defendants, in attempting to collect from the Plaintiff, the aforementioned alleged past due debt, employing, inter alia, the acts and/or omissions described above, violated:

    i. 15 U.S.C. § 1692e generally, and specifically, 15 U.S.C. § 1692e(10) and 1692e(11) by Defendants' December 19, 2019 initial communication, as described above;

    ii. 15 U.S.C. § 1692f generally, and specifically 15 U.S.C. § 1692g(a), by failing to advise the Plaintiff of any of his rights as required by § 1692g in Defendants' initial communication or within five (5) days of said initial communication to the Plaintiff in connection with the collection of the aforementioned alleged debt.

34. Upon information and belief, other persons hold the same or similar claims against the Defendants, for the Defendants' failure to notify them of their rights as mandated by 15 U.S.C. § 1692g, within five (5) days after the initial communications substantially similar to those received by the Plaintiff from the Defendants in the collection of consumer debts within the State of New York.

35. As mentioned above, Defendant AEL is a debt collector as that term is defined by 15 U.S.C. § 1692(a)(6) of the FDCPA.

36.     Defendant AEL's principal business purpose is the collection of debts and as such is a debt collector as defined under the FDCPA.

37.     In the alternative, American Express Legal regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

38.     Defendant AMEX, the creditor, used a name that falsely implied that a third party by the name of American Express Legal is involved in collecting its debts.

39.     Defendant AMEX pretended to be someone else, and Defendant AMEX used a pseudonym or alias.

40.     Defendant AEL is not a separate entity from Defendant AMEX, but rather in the process of collecting its own debts.

41.     Section § 1692(a) of the FDCPA states:

>       (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, **the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts**. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. (emphasis added)

42.     AMEX, the creditor, has used the name "American Express Legal," a name other than its own, thereby indicating that a third party is collecting or attempting to collect such debts. See <u>Vincent v. Money Store</u>, 736 F.3d 88, 99 (2d Cir. 2013). ("When a creditor that is collecting its own debts hires a third party for the purpose of sending letters that represent that the third party is collecting the debts, that is sufficient to show the "use" of a name by the creditor other than its own.")

43. When the Plaintiff contacted AMEX to discuss his account, he was told that his account was placed with American Express Legal and that American Express Legal is a different entity then the bank.

44. AMEX told Plaintiff that he must send all correspondence to AEL since AEL is a different company and entity, and not part of AMEX.

45. AMEX provided the address for AEL as 500 N Franklin Turnpike - P.O Box 278 Ramsey, NJ 07446-0275.

46. Defendants violated 15 U.S.C. §§ 1692(a)(6) for using a name other than their own which indicated that a third person was collecting the alleged debt.

47. As stated above, the Plaintiff received a complaint that was filed against him on October 11, 2019 in Superior Court of New Jersey, Ocean County

48. The Plaintiff had contacted AMEX prior to the lawsuit being filed against him, informing Defendant AMEX that he no longer resided in the state of New Jersey, and had moved to an address in Brooklyn, New York.

49. Plaintiff notified Defendant AMEX of his new address.

50. As such, Plaintiff did not reside in Ocean County at the time the lawsuit was filed.

51. Defendants knew or should have known that Plaintiff's residence did not create grounds for venue in the Superior Court of New Jersey, Ocean County, as alleged in the Summons and the Formal Complaint.[4]

---

[4] Langendorfer v. Kaufman, 2011 WL 3682775 (S.D. Ohio Aug. 23, 2011). (A complaint alleging a § 1691i venue violation in the underlying collection litigation was not time-barred, as the court adopted all three alternative bases advanced: the statute of limitations was triggered upon service of process and not the filing of the suit, the unlawful venue claim was subject to the continuing violation rule, and the discovery rule applied.), Canady v. Wisenbaker Law Offices, P.C., 372 F. Supp. 2d 1379 (N.D. Ga. 2005). (The court rejected as a matter of law the attorney collection firm's bona fide error defense since, once it had acquired actual knowledge from its process server that it had filed suit in an improper venue, it failed to follow its own internal procedures that required it to abandon the suit and instead intentionally continued to pursue the collection litigation, obtained a default, and pursued garnishment.)

52. Defendant AEL's service of the said Summons and Complaint upon Plaintiff violates the FDCPA because this litigation was commenced in a jurisdiction other than a jurisdiction in which the Plaintiff resides, namely, the Superior Court of New Jersey, Ocean County, and is therefore a communication in violation of numerous and multiple provisions of the FDCPA including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, 1692g(b) and 1692i(a)(2).

53. The summons and Complaint as mentioned above, was served at the Plaintiff's old New Jersey address.

54. At the time of service, the Plaintiff, Joel Friedman, no longer resided at the address of service as stated above.

55. Joel Friedman was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

56. The affidavit of service was therefore fraudulent. See Bowens v. LR Credit 10, LLC, 2011 U.S. Dist. LEXIS 143737 (W.D.N.Y. Dec. 5, 2011). (The court stated "New York law supports a claim of abuse of process where defendants fraudulently served process on a debtor to obtain a default judgment. Phillipe v. American Exp. Travel Related Servs. Co., 174 A.D.2d 470, 571 N.Y.S.2d 711 (N.Y.App. Div. 1991)."), Bowens v. Mel S. Harris & Assocs., LLC, 2008 U.S. Dist. LEXIS 16120, 2008 WL 619162 (W.D.N.Y. Feb. 28, 2008). (The court stated " The New York State Appellate Division has previously held that allegations of "sewer service"--the fraudulent service of process on a debtor by a creditor seeking to obtain default judgment--are sufficient to establish a cause of action for abuse of process.)[5]

---

[5] Velazquez v. Thompson, 451 F.2d 202, 204 (2d Cir. 1971). ("'Sewer service' is an ignominious practice which is not limited to summary proceedings for the eviction of tenants but is also employed in suits on installment payment contracts for personal

57. Upon information and belief, at all times relevant to this Complaint, Defendants aided and abetted the fraud, perjury, breach of official duty and other wrongful acts committed by the process servicing company that attempted service upon Joel Friedman in or around October of 2019.

58. Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10) and 1692f of the FDCPA, by making false and misleading representations, and engaging in unfair and abusive practices. Defendants' violations include, but are not limited to:

   A. Producing and filing fraudulent affidavits of service that falsely claim that Plaintiff and class members were served with a summons and complaint when in fact they were not;

   B. Producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not;

   C. Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiff and class members under false pretenses;

59. As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiff has sustained actual damages in an amount to be proved at trial and is also entitled to statutory damages, costs and attorneys' fees.

60. Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the

---

property permitting repossession and garnishment, providing a fertile field for the fleecing of the poor and the disadvantaged."), Kovalesky v. A.M.C. Associated Merchandising Corp., 551 F. Supp. 544, 546 (S.D.N.Y. 1982). ("'[S]ewer service' constitutes shoddy practice. It delays the process of justice and must be discouraged. This court has discretion to do just that.")15 U.S.C. § 1692a(6)(d); See generally, Sykes v. Mel Harris & Assocs., LLC, 2010 U.S. Dist. LEXIS 137461, 17 (S.D.N.Y. Dec. 29, 2010), citing Romea v. Heiberger & Assocs., 163 F.3d 111, 117 (2d Cir.1998) ("Thus, process servers whose involvement is merely 'limited to serving the [debt collection] communication on the consumer – in effect, to being messengers' – are exempt."), Sykes v. Mel Harris & Assocs., LLC, 2010 U.S. Dist. LEXIS 137461, *18 (S.D.N.Y. Dec. 29, 2010), citing Flamm v. Sarner & Assoc., P.C., 2002 U.S. Dist. LEXIS 22255, 2002 WL 31618443, at *5 (E.D.Pa. Nov. 6, 2002), Sykes v. Mel Harris & Assocs., LLC, 2010 U.S. Dist. LEXIS 137461, 18 (S.D.N.Y. Dec. 29, 2010), McNall v. Credit Bureau, 689 F. Supp. 2d 1265, 1278 (D. Or. 2010).

Defendants.

61. Plaintiff suffered actual harm by being the target of the Defendants' misleading debt collection communications.

62. Defendants violated the Plaintiff's right not to be the target of misleading debt collection communications.

63. Defendants violated the Plaintiff's right to a truthful and fair debt collection process.

64. Defendants used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

65. Defendants' communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

66. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendants' false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

67. These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

68. As an actual and proximate result of the acts and omissions of the Defendants, Plaintiff has suffered including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment for which he should be compensated in an amount to be established by a jury at trial.

## AS AND FOR A CAUSE OF ACTION

***Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendants.***

69.     Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through sixty-eight (68) as if set forth fully in this cause of action.

70.     This cause of action is brought on behalf of Plaintiff and the members of five classes.

71.     Class A consists of all persons whom Defendants' records reflect resided in the State of New York who communicated with Defendants' representatives within one year prior to the date of the within complaint up to the date of the filing of the complaint; (a) the Defendants denied the Plaintiff the right to dispute the debt verbally; and (b) required the Plaintiff to dispute the debt in writing; and (c) the Defendants made false statements in violation of 15 U.S.C. §§ 1692e(8) and 1692e(10).

72.     Class B consists of all persons whom Defendants' records reflect resided in the State of New York and who received letter communications in the form of a summons and formal Complaint; (a) bearing the Defendants' letterhead in substantially the same form as the Complaint received by the Plaintiff in or around December of 2019; (b) the Defendants failed to send the Plaintiff the 1692g mandatory disclosures, within five days of the Defendants' initial communication with the Plaintiff; (c) Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), 1692e(11), 1692f, and 1692g(a), for Defendant's intentional violation of the mandatory disclosure requirements of the FDCPA.

73.     Class C consists of all persons whom Defendants' records reflect resided in the State of New York and who received letter communications in the form of a summons and formal Complaint; (a) bearing the Defendants' letterhead in substantially the same form as the Complaint received by the Plaintiff in or around December of 2019; and (b) the Plaintiff

asserts that the Defendants violated 15 U.S.C. §§ 1692(a)(6) for using a name other than their own which indicated that a third person was collecting the alleged debt.

74. Class D consists of all persons whom Defendants' records reflect resided in the State of New York and who received letter communications in the form of a summons and formal Complaint; (a) bearing the Defendants' letterhead in substantially the same form as the Complaint received by the Plaintiff in or around December of 2019; and (b) the communication was served in a jurisdiction other than a jurisdiction in which the Plaintiff resides, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, 1692g(b) and 1692i(a)(2).

75. Class E consists of all persons whom Defendants' records reflect resided in the State of New York and who received letter communications in the form of a summons and formal Complaint; (a) bearing the Defendants' letterhead in substantially the same form as the Complaint received by the Plaintiff in or around December of 2019; and (b) wherein Defendants claimed that their agents had served a summons and complaint upon Plaintiff, however, Plaintiff believes that he was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service; and (c) the Plaintiff asserts that Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(9), 1692e(10), 1692e(11), 1692e(14), and 1692f, for using a process server who engages in sewer service.

76. Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A. Based on the fact that a form written and oral communications is at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

B. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendants violated the FDCPA.

C. The only individual issue is the identification of the consumers who received such communications (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendants.

D. The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

E. The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

77. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

78. If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

79. Collection attempts, such as those made by the Defendants are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

*Violations of the Fair Debt Collection Practices Act*

80. The Defendants' actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

81. Because the Defendants violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

    A. Statutory damages provided under the FDCPA, 15 U.S.C. § 1692(k);

    B. Attorney fees, litigation expenses and costs incurred in bringing this action; and

    C. Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
January 7, 2020

    _____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C. (AF-9508)
Attorney at Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

    _____/s/ Adam J. Fishbein___
Adam J. Fishbein (AF-9508)

Anthony J. Migliaccio, Jr., Esq. NJ ID: 046321992
Joshua J. Knurr, Esq. NJ ID: 045622006
Alexander Fink, Esq. NJ ID: 015912000
AMERICAN EXPRESS LEGAL
500 North Franklin Turnpike
PO Box 278
Ramsey, New Jersey 07446
877-305-0433
Staff Attorneys for Plaintiff(s)

| | |
|---|---|
| AMERICAN EXPRESS NATIONAL BANK | SUPERIOR COURT OF NEW JERSEY LAW DIVISION OCEAN COUNTY |
| Plaintiff(s), – against – | Docket No. OCN L -002587 19 |
| JOEL FRIEDMAN, | **SUMMONS** |
| Defendant(s). | |

## FROM THE STATE OF NEW JERSEY, TO THE DEFENDANT(S) NAMED ABOVE:

The American Express named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to American Express's attorneys whose name and address appear above, or to American Express, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief American Express demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

DATED: OCTOBER 14, 2019

/s/ Michelle M. Smith
Clerk of the Superior Court

Name of Defendant(s) to be served:

Joel Friedman

Address of Defendant(s) to be served:

Anthony J. Migliaccio, Jr., Esq. NJ ID: 046321992
Joshua J. Knurr, Esq. NJ ID: 045622006
Alexander Fink, Esq. NJ ID: 015912000
AMERICAN EXPRESS LEGAL
500 North Franklin Turnpike
PO Box 278
Ramsey, New Jersey 07446
877-305-0433
Staff Attorneys for Plaintiff(s)

| | |
|---|---|
| AMERICAN EXPRESS NATIONAL BANK<br><br>Plaintiff(s),<br><br>– against –<br><br>JOEL FRIEDMAN,<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>OCEAN COUNTY<br><br>Docket No._____<br><br>**COMPLAINT** |

Plaintiff, AMERICAN EXPRESS NATIONAL BANK f/k/a American Express Centurion Bank, and which is also the sucessor by merger to American Express Bank, FSB, (American Express), by its attorneys, as and for its complaint herein against defendant Joel Friedman ("Friedman"), hereby allege(s) as follows:

## The Parties

1.      AMERICAN EXPRESS NATIONAL BANK f/k/a American Express Centurion Bank[1], and which is also the sucessor by merger to American Express Bank, FSB[2] (American Express) a national bank under the laws of the United States of America with its office located at 4315 S. 2700 West, Salt Lake City, Utah, 84184 (hereinafter singularly or collectively referenced as "American Express").

2.      Upon information and belief, Friedman was and is at all relevant times an individual residing in Ocean County in the State of New Jersey, at ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

## The Facts

### A. The American Express Marriott Bonvoy American Express Card

3.      At all relevant times, Friedman was the holder of an American Express Marriott Bonvoy American Express Card that enabled him/her to charge items to an American Express Marriott Bonvoy American Express Card Account (Account No. xxxx-xxxxxx-x1006) (the "Account").

4.      At all relevant times, Friedman was the basic card member on the Account and thus is responsible for paying all amounts charged to the American Express Marriott Bonvoy American Express Card Account.

---

[1]   On April 1, 2018 American Express Centurion Bank changed its name to American Express National Bank. *See*, https://www.occ.treas.gov/topics/licensing/interpretations-and-actions/2018/interpretations-and-actions-jan-2018.html. *See also*, 12 U.S.C. § 35; 12 CFR 5.24.

[2]   On April 1, 2018 American Express Bank, FSB, merged with American Express National Bank with American Express National Bank as the surviving entity after the merger. *See*, https://www.occ.treas.gov/topics/licensing/interpretations-and-actions/2018/interpretations-and-actions-jan-2018.html. *See also*, 12 U.S.C. § 1828 *et seq*

5.  By accepting and using the American Express Marriott Bonvoy American Express Card, Friedman agreed to all of the terms and conditions set forth in the "Agreement Between American Express Credit Cardmember and American Express Bank, FSB" (the "Cardmember Agreement"). The Cardmember Agreement was provided to Friedman with the Marriott Bonvoy American Express Card.

6.  The terms of the Cardmember Agreement, Agreement Between American Express Credit Cardmember and American Express Bank, FSB include the following:

    a.  to pay all amounts charged to the Account by either Friedman or any additional cardmember or additional account user;

    b.  to pay finance charges on unpaid balances;

    c.  to pay the "Minimum Amount Due" by the due date indicated on the monthly billing statements mailed by or on behalf of American Express;

    d.  that if the Minimum amount due was not paid by the date given on the monthly statements the Account would become delinquent and American Express could assess late fees and declare the Account in default (as that term is used in the Cardmember Agreement);

    e.  that once Friedman is in default on the Account, American Express may declare the entire balance immediately due;

    f.  Friedman further agreed that in the event of default (as that term is used in the Cardmember Agreement) he/she would pay all reasonable costs incurred by American Express in protecting itself from any harm it may suffer as a result of the default; including but not limited to reasonable attorneys' fees incurred in collecting the balance due and court costs.

7.  Friedman used the Marriott Bonvoy American Express Card to charge various items to the Account for which payment was never made.

8.  American Express sent monthly statements to Friedman for the Account, showing the balance due on the Account.

9.  Friedman violated the Cardmember Agreement by refusing to remit the Minimum amount due indicated by the monthly statements.

10.  Friedman's failure to pay the Minimum amount due constituted a default under the Cardmember Agreement and lead to the account becoming delinquent. As a result, American Express suspended Friedman's charge privileges on the Account and the outstanding balance became due in its entirety.

11.  The account balance is $16,080.95.

## B. The American Express Amex Everyday Credit Card

12.  At all relevant times, Friedman was the holder of an American Express Amex Everyday Credit Card that enabled him/her to charge items to an American Express Amex Everyday Credit Card Account (Account No. xxxx-xxxxxx-x3002) (the ''Account'').

13.  At all relevant times, Friedman was the basic card member on the Account and thus is responsible for paying all amounts charged to the American Express Amex Everyday Credit Card Account.

14.    By accepting and using the American Express Amex Everyday Credit Card, Friedman agreed to all of the terms and conditions set forth in the "Agreement Between American Express Credit Cardmember and American Express Centurion Bank" (the "Cardmember Agreement"). The Cardmember Agreement was provided to Friedman with the Amex Everyday Credit Card.

15.    The terms of the Cardmember Agreement, Agreement Between American Express Credit Cardmember and American Express Centurion Bank include the following:

a. to pay all amounts charged to the Account by either Friedman or any additional cardmember or additional account user;

b. to pay finance charges on unpaid balances;

c. to pay the "Minimum Amount Due" by the due date indicated on the monthly billing statements mailed by or on behalf of American Express;

d. that if the Minimum amount due was not paid by the date given on the monthly statements the Account would become delinquent and American Express could assess late fees and declare the Account in default (as that term is used in the Cardmember Agreement);

e. that once Friedman is in default on the Account, American Express may declare the entire balance immediately due;

f. Friedman further agreed that in the event of default (as that term is used in the Cardmember Agreement) he/she would pay all reasonable costs incurred by American Express in protecting itself from any harm it may suffer as a result of the default; including but not limited to reasonable attorneys' fees incurred in collecting the balance due and court costs.

16.    Friedman used the Amex Everyday Credit Card to charge various items to the Account for which payment was never made.

17.    American Express sent monthly statements to Friedman for the Account, showing the balance due on the Account.

18.    Friedman violated the Cardmember Agreement by refusing to remit the Minimum amount due indicated by the monthly statements.

19.    Friedman's failure to pay the Minimum amount due constituted a default under the Cardmember Agreement and lead to the account becoming delinquent. As a result, American Express suspended Friedman's charge privileges on the Account and the outstanding balance became due in its entirety.

20.    The account balance is $6,054.98.

## AS AND FOR A FIRST CAUSE OF ACTION
### Breach of Contract - Marriott Bonvoy American Express Card

21.    American Express repeats and realleges each and every allegation contained in paragraphs 1 through 20 of this complaint as though fully set forth at length herein.

22.    Friedman agreed to pay for all items charged to the Account, plus finance charges and late fees. In addition, Friedman agreed to pay Plaintiff's court costs and reasonable attorneys' fees in the event that American Express must refer the Account to its outside attorneys for collection.

23.     Friedman is currently indebted to American Express for unpaid card charges, finance charges and late fees totaling $16,080.95.

24.     Despite due demand, Friedman refuses to pay American Express any portion of the outstanding balance due and owing.

25.     As a result of Friedman's refusal to pay the outstanding balance, American Express referred its claims against Friedman to its attorneys for collection.

26.     Friedman's continuing refusal to pay compelled the aforementioned attorneys to commence the current action, thereby entitling American Express to collect from Friedman court costs.

27.     By reason of the foregoing, American Express National Bank is entitled to judgment against Joel Friedman for the sum of $16,080.95 for breach of contract, plus court costs.

## AS AND FOR A SECOND CAUSE OF ACTION
### Account Stated - Marriott Bonvoy American Express Card

28.     American Express repeats and re-alleges each and every allegation contained in paragraphs 1 through 27 of this complaint as though fully set forth at length herein.

29.     American Express duly issued and sent to Friedman the monthly statements, which set forth in detail all items charged to the Cardmember Account and the total minimum amount due and owing by Friedman to American Express.

30.     Friedman received the monthly statements without giving protest or indication that they were erroneous in any respect. Friedman thereby acknowledged that the debt owed to American Express, as set forth in the monthly statements, is true and correct.

31.     By reason of the foregoing, American Express National Bank is entitled to judgment against Joel Friedman for an account stated in the amount of $16,080.95 plus court costs.

## AS AND FOR A THIRD CAUSE OF ACTION
### Unjust Enrichment - Marriott Bonvoy American Express Card

32.     American Express repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 of this complaint as though fully set forth at length herein.

33.     Friedman benefited from all of the charges made to the Account, has acknowledged receipt of those benefits, and has failed to pay for same.

34.     Friedman has been unjustly enriched to American Express's detriment.

35.     By reason of the foregoing, American Express National Bank is entitled to judgment against Joel Friedman for unjust enrichment in an amount to be determined at trial, plus court costs.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Breach of Contract - Amex Everyday Credit Card

36.     American Express repeats and realleges each and every allegation contained in paragraphs 1 through 35 of this complaint as though fully set forth at length herein.

37.    Friedman agreed to pay for all items charged to the Account, plus finance charges and late fees. In addition, Friedman agreed to pay Plaintiff's court costs and reasonable attorneys' fees in the event that American Express must refer the Account to its outside attorneys for collection.

38.    Friedman is currently indebted to American Express for unpaid card charges, finance charges and late fees totaling $6,054.98.

39.    Despite due demand, Friedman refuses to pay American Express any portion of the outstanding balance due and owing.

40.    As a result of Friedman's refusal to pay the outstanding balance, American Express referred its claims against Friedman to its attorneys for collection.

41.    Friedman's continuing refusal to pay compelled the aforementioned attorneys to commence the current action, thereby entitling American Express to collect from Friedman court costs.

42.    By reason of the foregoing, American Express National Bank is entitled to judgment against Joel Friedman for the sum of $6,054.98 for breach of contract, plus court costs.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Account Stated - Amex Everyday Credit Card

43.    American Express repeats and re-alleges each and every allegation contained in paragraphs 1 through 42 of this complaint as though fully set forth at length herein.

44.    American Express duly issued and sent to Friedman the monthly statements, which set forth in detail all items charged to the Cardmember Account and the total minimum amount due and owing by Friedman to American Express.

45.    Friedman received the monthly statements without giving protest or indication that they were erroneous in any respect. Friedman thereby acknowledged that the debt owed to American Express, as set forth in the monthly statements, is true and correct.

46.    By reason of the foregoing, American Express National Bank is entitled to judgment against Joel Friedman for an account stated in the amount of $6,054.98 plus court costs.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Unjust Enrichment - Amex Everyday Credit Card

47.    American Express repeats and re-alleges each and every allegation contained in paragraphs 1 through 46 of this complaint as though fully set forth at length herein.

48.    Friedman benefited from all of the charges made to the Account, has acknowledged receipt of those benefits, and has failed to pay for same.

49.    Friedman has been unjustly enriched to American Express's detriment.

50.    By reason of the foregoing, American Express National Bank is entitled to judgment against Joel Friedman for unjust enrichment in an amount to be determined at trial, plus court costs.

**WHEREFORE,** American Express National Bank requests judgment against defendant, Joel Friedman as follows:

(i)     on Count I of the complaint, American Express National Bank requests judgment against defendant, Joel Friedman in the sum of $16,080.95 plus court costs;

(ii)     on Count II of the complaint, American Express National Bank requests judgment against defendant, Joel Friedman in the sum of $16,080.95 plus court costs;

(iii)     on Count III of the complaint, American Express National Bank requests judgment against defendant, Joel Friedman in an amount to be determined at trial, plus court costs;

(iv)     on Count IV of the complaint, American Express National Bank requests judgment against defendant, Joel Friedman in the sum of $6,054.98 plus court costs;

(v)     on Count V of the complaint, American Express National Bank requests judgment against defendant, Joel Friedman in the sum of $6,054.98 plus court costs;

(vi)     on Count VI of the complaint, American Express National Bank requests judgment against defendant, Joel Friedman in an amount to be determined at trial, plus court costs; and

(vii)     for such other and further relief as this Court deems just and proper.

### Certification Pursuant to R.4:5-1(b)(2)

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in the action.

### Designation of Trial Counsel Pursuant to R.4:5-1(c)

Anthony J. Migliaccio, Jr., Esq. is hereby designated as Trial Counsel for American Express.

Dated:     October 11, 2019

/s/ Alexander Fink, Esq.
___ Anthony J. Migliaccio, Jr., Esq.
___ Joshua J. Knurr, Esq.
_X_ Alexander Fink, Esq.
**AMERICAN EXPRESS LEGAL**
Staff Attorneys for Plaintiff
American Express National Bank
f/k/a American Express Centurion Bank and
sucessor by merger to American Express Bank, FSB

**Please send all correspondence to:**
**American Express Legal**
**P.O. Box 278**
**Ramsey, NJ 07446**
**(877) 305-0433**